## J. C. MITCHELL
### v.
## CHESAPEAKE & OHIO R. R. Co.

WAIVER—DELIVERY.—The court is of opinion that plaintiff's telegram to his broker, " Do the best you can; whatever you do will be satisfactory," was intended to and had the effect of a waiver of payment of the drafts and procurement of the bills of lading, as a condition precedent to the broker obtaining possession of the hay, and was an authority to defendant to deliver to such broker.

APPEAL from the County Court of Cook county; the Hon. RICHARD PRENDERGAST, Judge presiding. Opinion filed November 25, 1885.

Mr. LUMAN ALLEN, for appellant; that defendant's delivery

to the broker was a conversion, cited McEnlet v. N. J. Steamboat Co., 45 N. Y. 37 ; Hutchinson on Carriers, Ch. 8, § 344; Price v. O. & S. Ry., [50 N. Y. 213; Stephenson v. Hart, 4 Bing. 476 ; Devereaux v. Barclay, 2 B. & Ald. R. 708; Wilson S. M. Co. v. L. & N. R. R. Co., 71 Mo. 214; Viner v. Steamship Co., 50 N. Y. 23.

Mr. M. Caruthers, for appellee ; when for any reason the consignee is not ready to receive goods on their arrival and the carrier puts them in store, ready for delivery, the carrier's liability as insurer ceases, cited Merchants Despatch Co. v. Hallock, 64 Ill. 284; Rothschild v. Mich. C. R. R. Co., 69 Ill. 164; I. C. R. R. Co. v. Alexander, 20 Ill. 23 ; Noway Plains Co. v. B. & M., 1 Gray, 263.

McAllister, J. This was an action on the case in the court below brought by appellant, Mitchell, against appellee, the Chesapeake & Ohio R. R. Co., to recover damages for the alleged loss by negligence and wrongful conversion of three car loads of baled hay, delivered at Chicago, one, December 22, 1881, another December 27th, and the third, January 3, 1882; by the former to the latter to be carried, one car load to Wilson Mills, and two to Raleigh, in the State of North Carolina. The case was tried under plea of not guilty, by the court without a jury, resulting in a finding and judgment for defendant, from which plaintiff took this appeal.

The court below was not requested to pass upon any propositions of law, so that all we have to determine is, whether the evidence fairly tended to support the finding. Upon a careful consideration of the testimony, we are of opinion that it did, and that there is no sufficient ground for setting it aside. It appears that plaintiff, before and at the time of delivering this hay to defendant, had an agent or broker at Raleigh, of the name of Gattis, who had contracted a sale to three different parties there of a like quantity of No. 1 timothy, at a specified price, and this hay was sent by plaintiff, in whose behalf Gattis was acting, to be delivered on those contracts; that the defendant gave plaintiff, at the time of receiving the hay from

him here, a bill of lading in the usual form, for each car load; that the plaintiff, thereupon, drew a draft on Gattis for such sum as each car load would come to at the price for which the latter had contracted to sell it, attached each draft to the corresponding bill of lading, which latter he indorsed, and put them in a Chicago bank to be forwarded to Raleigh for collection. Of course it was expected that Gattis would have to pay the drafts before he could get possession of the bills of lading, and that the latter would be necessary to his getting the hay from defendant. But it turned out that the hay, on arrival at its destination, did not answer, as to quality, the hay which Gattis had contracted, and that it was really in a bad condition and worth much less than plaintiff supposed, and the parties who had purchased refused to take it. The bills of lading with the drafts were sent to a correspondent of the bank at Raleigh for collection, but Gattis declined to accept and pay the drafts or either of them. The plaintiff was informed of the situation of affairs, and was finally informed by telegram from Gattis that the railroad company insisted upon the hay being taken from their warehouse at once. Whereupon, the plaintiff being still the holder of the several bills of lading and drafts, replied to Gattis by telegram: "Do the best you can; whatever you do will be satisfactory." This being shown by Gattis to the agent of defendant at Raleigh (the hay all being then there), the latter regarding this telegram as authority from the plaintiff to deliver the hay to Gattis for him, delivered it to Gattis, without production and surrender of the bills of lading, on his paying the freight, etc. Gattis afterward sold the hay, at the best he could get, but at a much reduced price, and sent plaintiff an account of his doings, and of the balance in his hands, directing plaintiff to draw on him for the amount. About a month thereafter plaintiff did draw, but Gattis having meanwhile failed, the draft was not honored.

There is no satisfactory evidence that the condition of the hay, at its destination, was in any respect due to any fault or negligence on the part of defendant, so that the only question presented is, was the delivery to Gattis without payment

of the several drafts, and possessing himself of the bills of lading and their surrender to defendant, wrongful as respects the plaintiffs. It is a fair inference from the testimony, that plaintiff knew when he sent said telegram to Gattis, that the latter would not, as things were, pay those drafts; that he also knew there was an urgent necessity for taking the hay off defendant's hands and relieving it of the care of this bulky and extra-hazardous property, which it was under no legal obligations to any longer store and care for. Plaintiff had previously directed Gattis, on being informed of the condition of the hay, and that the parties he had contracted with had refused to take it, to sell to other parties. Under these circumstances he sends to Gattis: "Do the best you can; whatever you do will be satisfactory." We can come to no other conclusion than that this was intended to, and had the effect of a waiver of payment of the drafts and procurement of the bills of lading as a condition precedent to Gattis obtaining possession of the hay. It was an authority to Gattis to take possession without such payment, etc., and was, of necessity, an authority to the defendant to deliver to Gattis without such payment, etc. Suppose plaintiff had gone in person and said: "I am still the holder of the bills of lading and drafts, and I want the possession of that hay." Would a delivery to him without surrender of the bills of lading, be a wrong of which he could complain? He has done the same thing through his authorized agent. What is the difference? We can see none. Besides there is evidence of a subsequent ratification with full knowledge of the acts of Gattis in thus obtaining possession and disposing of the hay. There is nothing in this appeal, and the judgment should be affirmed.

Affirmed.